RCV'D - USDC COLA SC
NOV 4 '25 PM 12:18

**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH CAROLINA**

**TANNIE SHAVONNE JACKSON**, Plaintiff

v.

**UNITED STATES OF AMERICA**, Defendant

Civil Action No. 3:25-cv-13273-CMC-PJG

**COMPLAINT**

Plaintiff, Tannie Shavonne Jackson, brings this action pro se against the United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, and alleges as follows: Lack of Due Process due to Negligence (Omission) and Wrongful acts.

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1346(b).

2. The administrative claim was served on the organization May 5, 2025.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1402(b), as the events occurred on 4 November 2024 at the 81st Readiness Division, Department of the Army, 81 Wildcat Way, Fort Jackson, Columbia, South Carolina.

**II. PARTIES**

3. Plaintiff is a resident of Columbia, South Carolina, and was employed as a dual-status Military Technician (MILTECH) with the Department of the Army; employed currently as non-duel status.

1

4. Defendant is the United States of America, acting through its Agency, the Department of the Army, and its employees.

## III. STATUTE OF LIMITATIONS

5. The original Merit Systems Protection Board administrative hearing took place in October 2018, but the MSPB lacked a quorum from January 2017 through March 2022. The Plaintiff filed a petition for review, but petitions could not be decided during the quorum shortage, creating a backlog. The MSPB issued a final order on May 28, 2024. Relevant records were later discovered through a FOIA request while preparing a rebuttal, but the Agency produced those documents on November 4, 2024, after the rebuttal deadline. The documents, dated 22 March 2017 through 12 May 2017, were requested and available in April 2018 when discovery for the administrative hearing began. The withheld records had extreme evidentiary value and showed the Agency did engage in retaliation against the Plaintiff.

## IV. STATEMENT OF CLAIM

The Plaintiff seeks monetary compensation as legal redress for professional and personal damages caused by the defendant's negligence and denial of due process, specifically through the wrongdoing of withholding critical documents. The Plaintiff served as a dual-status Military Technician (MILTECH), holding both civilian and military roles (duel-status). As a condition of employment (COE) for her civilian position, she was required to maintain active membership in the Army Reserve. Termination from the civilian role is automatically triggered if an individual ceases to be a member of the Army

Reserve. The Agency initiated a flawed investigation and used the findings to reassign the Plaintiff from a position that was clearly on track for conversion. Following the reassignment, the Agency expedited a military action to terminate her civilian employment, citing alleged violations of employment conditions. Absent the reassignment—and its underlying motive to preempt the conversion, the military action would not have been initiated or accelerated because the Plaintiff was in full compliance with all applicable requirements.

## V. STATEMENT OF FACTS

6. The Plaintiff worked in the Directorate of Human Resources as the Chief, Full Time Support, Civilian Branch. Her branch was responsible for processing all civilian actions for an Agency of 1200 employees in nine states.

7. Several dated emails demonstrate that the Plaintiff repeatedly raised concerns to the Chief of Staff regarding the toxic work environment within the Directorate of Human Resources. She reported that the persistent hostility and dysfunction were causing significant mental distress, which in turn was negatively impacting the well-being of her and by extension, her children as well.

8. On November 3, 2015, the Plaintiff filed a formal complaint with the 81st Regional Division Inspector General's Office alleging toxic leadership and nepotism involving Director, Directorate of Human Resources, the Plaintiffs supervisor and the supervisor's spouse. It was said that the couple enjoyed preferential treatment from the Chief of Staff which contributed to a dysfunctional and hostile work environment. Sworn statements from other employees within the Directorate corroborate the Plaintiff's concerns, indicating that the couple was

perceived to be equally toxic and detrimental to workplace morale as the Director.

9. The complaint detailed improper hiring and rating arrangements, and an attempt to expedite a Quality Step Increase (QSI) for the male spouse. The Director hired the male spouse in a position that fell under the wife's supervision. To avoid conflict, the Director rated both the husband and wife. The Chief of Staff rated Director and senior rated the couple.

10. Upon review, the IG office referred the expedition of the award over to the command leadership to investigate for Nepotism.

11. On February 23, 2016, the Chief of Staff, appointed an investigating officer (IO) under AR 15-6 to investigate the Plaintiff's supervisor.

12. On the same day, the Chief of Staff received an email regarding the NDAA 2016 mandate to convert 20% of MILTECH positions to DAC roles. The Director confirmed the Plaintiff was actively working on this initiative. Plaintiff's position was identified for conversion.

13. On August 3, 2016, Plaintiff received a reassignment notice from the Chief of Staff based on findings that labeled her behavior as toxic: "...You failed to treat your subordinates with dignity and respect and to ensure their well-being. Many referred to your behavior as "toxic" and as creating a "hostile work environment". Your improper actions and lack of appropriate supervisory skills had a negative impact on your staff and on the command climate within DHR. She responded: "If I am being moved based on allegations... then I should have the right to defend

myself against those accusations." Plaintiff explicitly requested the opportunity to rebut the findings. She was denied the opportunity to rebut as well as access to the full investigation but told she could view findings "related to her."

14. The findings stated the Agency should take disciplinary action up to termination on the Plaintiff for abusing her authority and not treating personnel with dignity and respect. If she remained in government service, she should not hold a supervisory position. This action was recommended even though the (IO) never questioned the Plaintiff's staff or anyone filling a complaint against the Plaintiff.

15. Unbeknownst to the Plaintiff at the time, the same investigation found misconduct by her supervisor and the Director, recommending suspension and reprimand respectively. In contrast to the Plaintiff, her supervisor was later permitted to submit a formal rebuttal, provide supporting documentation, and successfully appeal the findings against her.

16. The Agency Counsel, reviewed and approved the investigation despite several procedural defects in accordance with regulatory guidance. His review stated the evidence supported the findings.

17. The reassignment was effective on August 22, 2016. On the same day, the Plaintiff received notice of involuntary military separation.

18. On September 22, 2016, the Plaintiff received an email from the Chief of Staff explaining that a mistake had occurred regarding her reassignment. Due to the fact the position was not duel status, the reassignment was not processed as duel status. She was to retain her MILTECH status. The Plaintiff informed him

5

that she was sharing the position with another employee who was non-duel status and that the series was slated to convert. The Chief of Staff told the Plaintiff it was not intended by the Agency to change her status.

19. On February 14, 2017, Plaintiff appeared before a military board appointed by the Agency, which voted to separate her.

20. In March 2017, the Director and Chief of Staff submitted statements exonerating the Plaintiff's supervisor. ***(Documents discovered November 4, 2024)***

21. On April 15, 2017, the Plaintiff's supervisor submitted her rebuttal, with the Director's and the Chief of Staff's statements as supporting documentation, to the IG office to have her findings reversed. ***(Documents discovered November 4, 2024)***

22. On May 9, 2017, Plaintiff signed a memorandum formally appealing her military separation. During a meeting with the Commanding General, she informed him that she was in full compliance with the Army's height and weight standards and informed him about toxic atmosphere within the last year. He stated he was unaware of the circumstances. He affirmed the Plaintiff she had the right to appeal and confirmed that he would be the one to adjudicate the appeal.

23. The Plaintiff submitted her appeal to the Agency's legal office. The Commanding General left his position early. To date, it is unknown whether he reviewed it.

24. On May 12, 2017, the IG office told the Plaintiff's supervisor to direct her concerns to the Directing Authority of the 15-6 investigation. She forwarded the IG's email along with all supporting documentation to the Chief of Staff, and the

6

Agency's attorney, for the newly appointed Commanding General to reconsider the investigation's findings. *(Documents discovered November 4, 2024)*

25. On July 14, 2017, the findings against the Plaintiff's supervisor were reversed. *(Documents discovered November 4, 2024)*

26. The Agency processed the Plaintiff's separation packet to HQ, United States Army Reserves (USARC). On August 2, 2017, the Agency's Staff Judge Advocate, supervisor of the Agency's Attorney, sent an email to USARC requesting a status and emphasizing that the Plaintiff was a MILTECH and if USARC took too long, the Plaintiff may become sanctuaried due to her years in service. The Agency would not be able to terminate her civilian employment for conditions of employment until the military separation was done. At the time of this request, Plaintiff had met all requirements for continued service.

27. On March 12, 2018, Human Resources Command (HRC), in response to an email sent by USARC, confirmed it could not process Plaintiff's separation due to a change in the regulation. On March 15, 2018, USARC issued a memorandum providing guidance for the involuntary separation of officers under AR 135-175. The guidance advised that all officers pending separation under paragraph 2-13 prior to December 29, 2017, be re-notified. Officers separated under paragraph 2-12, like the Plaintiff, was also recommended although not required.

28. On March 23, 2018, MSPB received Plaintiff's IRA appeal. On the same day, the Agency contacted USARC regarding the status of the Plaintiff's separation.

29. On March 26, 2018, USARC published separation orders effective April 16, 2018.

30. On April 13, 2018, despite the Agency sending the Plaintiff's separation orders to the servicing personnel center to initiate termination for violation of condition of employment, they were informed that the action would not be processed because the series she occupied was being converted.

31. On April 23, 2018, Plaintiff's attorney served interrogatories and a request for production of documents to the representing attorney for the Agency.

32. The Plaintiff's supervisor's rebuttal and supporting documents were not included in the Agency's production.

33. The Agency's attorney's legal review supported findings later contradicted by the Plaintiff's supervisor accepted rebuttal which stated "...there were several issues, wrong assumptions, and omitted facts in the investigating officer's analysis". Since the command accepted the Plaintiff's supervisor's rebuttal, the legal review became void. Without the legal review, there was no basis to reassign the Plaintiff.

34. The administrative judge's ruling was based on an incomplete record, lacking critical exculpatory evidence.

## V. LEGAL BASIS FOR NEGLIGENCE UNDER SOUTH CAROLINA LAW

35. Plaintiff's claims are grounded in the elements of negligence as recognized under South Carolina law:

- **Duty**: Federal employees owed Plaintiff a duty of care to follow lawful procedures, protect employee rights, ensure fair investigations and equity in accordance with applicable regulations and policies.

- **Breach**: The Chief of Staff, the Agency's attorney, and the attorney representing the Agency breached their duties through procedural violations, omissions, and failure to disclose evidence in accordance with professional rules of conduct.

- **Causation**: These breaches directly led to Plaintiff's reassignment and separation.

- **Proximate Cause**: The reassignment was the **but-for cause** of Plaintiff's expedition of separation, loss of benefits, and resulting injuries.

    - **Supporting points**

    - **Professional ethics violation** — Breached AR 27-26 Rule 3.3 and Rule 3.4(a) by failing to be candid and by obstructing access to evidentiary material.

    - **Procedural/regulatory violations** — Failed to follow AR 15-6 review and AR 690-750/752 procedures, producing procedural unfairness.

    - **Discovery misconduct** — Withheld an email rebuttal known and not produced in discovery.

- o **Prejudice to Plaintiff** — Denial of rebuttal opportunity, impartial investigation, and the chance to present exculpatory evidence materially harmed the Plaintiff's position.

28. Plaintiff was actively working on the MILTECH-to-DAC conversion initiative, and her position was identified for conversion. The reassignment removed her from that position, eliminating her path to DAC status — a role that would have preserved her civilian employment regardless of military separation. The Agency's knowledge of the pending conversion and its decision to reassign Plaintiff instead of allowing the transition constitutes a breach of duty and a proximate cause of harm.

## VI. LEGAL CHARACTERIZATION OF CONDUCT

29. In tort law, "retaliation" refers to adverse actions taken deliberately against an individual in response to their engagement in protected activities, such as whistleblowing or filing complaints. In this case, the Plaintiff won her IRA because she filed the IG complaint which deemed her as a whistleblower. Plaintiff does not allege intentional torts or malicious acts. Rather, the claims arise from negligent omissions, procedural failures, and breaches of duty by federal employees acting within the scope of their employment. The investigation, reassignment, and separation were not the result of deliberate harm, but of negligent execution of personnel processes, failure to disclose exculpatory evidence, and disregard for regulatory safeguards. These failures constitute actionable negligence under South Carolina law and the FTCA.

## VII. INJURIES

30. Plaintiff was denied due process and involuntarily separated with 19 years, 1 month, and 12 days of service, ending her military career. An investigation directed by the United States Army Reserve Commanding General based on an IG complaint the Plaintiff made regarding false statements given by senior personnel during the MSPB hearing revealed the separation order should be appealed. She lost retirement pay and benefits. Retirement reserve pay is not prorated. Also, the separation nullified the Post-9/11 GI Bill transferred to her dependents. The Plaintiff transferred her benefits on September 10, 2014 with a 4-year commitment. Her service commitment date was set to end on September 20, 2018 (5 months after the separation). The Plaintiff has a daughter currently enrolled in college.

31. Plaintiff was reassigned to a series for which she lacked competitive experience, limiting promotion potential. Due to the absence in her original series, she is no longer competitive.

32. Plaintiff suffers from a form of PTSD, depression, and anxiety, requiring therapy, and medication. There were two instances that required hospitalization. She was also placed in a five-month intensive outpatient program (IOP).

33. Plaintiff experiences emotional triggers, panic attacks, and workplace paranoia that have been witnessed by co-workers.

34. Plaintiff fears job loss and financial instability.

35. Plaintiff's children required therapy; her daughter was also enrolled in an IOP and needed tutoring.

36. These cumulative impacts have caused long-term hardship, loss of joy, diminished well-being, and financial insecurity.

## VIII. RELIEF REQUESTED

Plaintiff seeks monetary damages totaling **$776,312**, itemized as follows:

- **Post-9/11 GI Bill Equivalent**: $115,312
  - Based on 36 months of benefits at ~$10,728/year tuition, $1,900/month housing for 9 months, and $1,000/year book stipend.

- **Attorney Fees**: $21,000

- **Medical Expenses (Past and Future)**: $15,000

- **Lost Earning Capacity**: $340,000
  - Based on GS-12 average salary (~$79,000) vs. GS-13 average salary (~$103,500), with projected career impact over 14–17 years.

- **Emotional Stress and Pain**: $300,000 which includes the lost of retirement pay. According to reserve military calculator, $2,403/monthly, $28,837 yearly.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant United States of America for

## X. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an

12

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 4 November, 2025.

Signature of Plaintiff: *Tannie Shavonne Jackson*

Printed Name of Plaintiff: Tannie Shavonne Jackson

15 Lee Ridge Court
Columbia, SC 29229